**Wayne FINNE, Plaintiff,**

v.

**DAIN BOSWORTH INCORPORATED, Thomas Ranfrance and Michael Maher, Defendants.**

**Civ. No. 4–86–399.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 13, 1986.

Mark Arth and Gary L. Huusko, Arth & Huusko, St. Paul, Minn., for plaintiff.

James B. Lynch and Michael A. Lindsay, Dorsey & Whitney, Minneapolis, Minn., for defendants Dain Bosworth Inc. and Maher.

Steven E. Rolsch, George Restovich, Patterson-Restovich, Rochester, Minn., for defendant Ranfranz.

### MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motions to dismiss, for partial summary judgment, for a more definite statement and for a stay of proceedings pending arbitration. Defendants' motions will be granted in part and denied in part.

### FACTS

Plaintiff Wayne Finne (Finne) is a resident of Olmsted County, Minnesota. Defendant Dain Bosworth Inc. (Dain) is a broker-dealer corporation engaged in the sale of securities. Defendants Thomas Ranfranz (Ranfranz) and Michael Maher (Maher) are or were employees of Dain in its Rochester, Minnesota branch.

This is an action for violations of Sections 12(1), 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.;* viola-

tions of the Securities Exchange Act of 1934 and Rules 106–5 and 106–16 thereunder; and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* Plaintiff also brings claims of state securities law violations and common law breach of fiduciary duty and fraud pursuant to the Court's pendent jurisdiction. Jurisdiction for plaintiff's federal claims lies under Section 22(a) of the Securities Act of 1933, Section 27 of the Securities Exchange Act of 1934, and 18 U.S.C. § 1965.

In or about 1979 Finne opened an account with Dain at its Rochester, Minnesota branch office. On March 3, 1981 he executed a "Customer's Margin Agreement" governing the broker-customer relationship. This agreement included a standard arbitration clause. Paragraph 10 of each Customer Margin Agreement provides:

> *Any controversy between you [Dain Bosworth] and me [the customer] arising out of or relating to this agreement or the breach thereof shall be settled by arbitration* in accordance with the rules then obtaining of the New York Stock Exchange, or if the New York Stock Exchange declines to accept jurisdiction, then of the American Arbitration Association. Unless otherwise provided by the applicable rules, any arbitration hereunder shall be before three (3) arbitrators. The award of the arbitrators or a majority of them shall be final and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

(Emphasis added.)

Finne proceeded to engage in securities trading through his account at Dain Bosworth Inc. Among the securities traded by Finne was stock of Denelcor, a company involved in research and development of a super-fast computer. After several years of trading in this particular stock, the company, Denelcor, apparently experienced difficulties and eventually went into bankruptcy. Finne contends that Ranfranz and Maher encouraged him to engage in trading Denelcor stock by making false and fraudulent misrepresentations to him, and as a result Finne lost substantial sums of money. Plaintiff subsequently brought this suit.

Defendants now move to dismiss plaintiff's complaint for failure to state a claim on which relief can be granted and failure to plead fraud with particularity. Defendants further move for a more definite statement of plaintiff's state securities law claim, for partial summary judgment on the common law breach of fiduciary duty and breach of contract claims, and for a stay of proceedings pending arbitration for any non-dismissed claims.

## DISCUSSION

### A. Section 12(1) Claims

■ Count I of plaintiff's complaint alleges a violation of section 12(1) of the Securities Act of 1933. Section 12(1) of the Securities Act of 1933 imposes civil liability for selling or offering to sell an unregistered security or using a prospectus that does not satisfy statutory requirements. 15 U.S.C. §§ 77e, 77*l*(1). All section 12 actions are subject to the statute of limitations provisions of section 13 of the 1933 Act. Section 13 provides that all actions under section 12(1) must be brought within one year after the violation upon which it is based. "In no event shall any such action be brought ... more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. Compliance with section 3 is an essential element of a section 12 action, and thus compliance is a substantive, rather than a procedural, matter. *Hagert, v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1033 (D.Minn.1981); *McMerty v. Burtness,* 72 F.R.D. 450, 453 (D.Minn.1976). Therefore, a plaintiff must affirmatively plead facts indicating the action has been timely brought. *Hagert,* 520 F.Supp. at 1033. *Accord, Shotto v. Laub,* 635 F.Supp. 835, 837 (D.Md.1986); *Woods v. Homes and Structures of Pittsburg, Kansas, Inc.,* 489 F.Supp. 1270, 1289 (D.Kan.1980); *Kroungold v. Triester,* 407 F.Supp. 414, 419 (E.D.Pa.1975).

Plaintiff in this case has failed to plead and prove that his action is timely brought, and has also failed to plead and prove that the security at issue, Denelcor stock, was in fact an unregistered security when it was offered for sale or sold to the public. The facts pled by plaintiff show that his section 12(1) claim is time-barred by section 13. Plaintiff's complaint states that he began to engage in transactions involving Denelcor stock in 1981. Complaint ¶ 6, 7. The complaint was filed on May 13, 1986. Thus even if the Denelcor stock was an unregistered security when it was sold or offered for sale to plaintiff in 1981, plaintiff has obviously failed to bring this action within the three-year limit of section 13. Accordingly, Count I of plaintiff's complaint will be dismissed with prejudice as time-barred.

**B. Section 12(2) Claims**

■ Count II of plaintiff's complaint alleges violations of section 12(2) of the 1933 Act. Section 12(2) provides a private right of recovery against any person who offers or sells a security by the use of any means of interstate commerce, by means of a prospectus or oral communication which includes an untrue statement of material fact or omits to state material facts. 15 U.S.C. § 77*l* (2). The section 13 statute of limitations on section 12 actions provides that actions for violation of section 12(2) must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any action be brought ... more than three years after the sale [of the security]." 15 U.S.C. § 77m. The section 13 limitations period begins to run at the point at which a plaintiff has enough facts to be on inquiry notice of a potential claim; it does not wait until he has full knowledge of the eventual particulars of his case. *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 554–55 (1977).

■ Where defendants' fraudulent concealment of material facts prevents a plaintiff from discovering the alleged viola-

tions, the one-year limitations period of section 13 does not commence until plaintiff has, or in the exercise of due diligence should have, discovered the violation. *Weiss v. Gibson*, 610 F.Supp. 609, 611 (D.D.C.1985); *Currie v. Layman Resources Corp.*, 595 F.Supp. 1364, 1379 (N.D.Ga. 1984). In no event, however, can an action be brought more than three years after the sale of the security alleged to be in violation of section 12(2). 15 U.S.C. § 77m. Additionally, the doctrine of equitable tolling does not apply to this three-year maximum period. *See, e.g., Clute v. Davenport Co.*, 584 F.Supp. 1562, 1577 (D.Conn.1984), *citing Admiralty Fund v. Hugh Johnson Co.*, 677 F.2d 1301, 1308 (9th Cir.1982); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 968 (5th Cir.1981); *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899 (E.D.Wisc.1978); *Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283, 289–91 (W.D.N.Y.1977); *Cowsar v. Regional Recreations, Inc.*, 65 F.R.D. 394, 397 (M.D.La.1974). Moreover, since section 13 is an essential element of a section 12 action, plaintiff must affirmatively plead facts indicating compliance with section 13. *Hagert*, 520 F.Supp. at 1033. *Accord, Shotto v. Laub*, 635 F.Supp. 835, 837 (D.Md.1986); *Woods v. Homes and Structures of Pittsburgh, Kansas Inc.*, 489 F.Supp. 1270, 1289 (D.Kan.1980); *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D. Pa.1975).

■ Plaintiff's complaint alleges eight instances of fraudulent misrepresentations by oral communication in violation of section 12(2). Complaint ¶ 7(a)–(h). Action on two of these instances is time-barred since one occurred in May, 1981 and the other in early 1982 and the complaint was not filed until May 13, 1986, long after the maximum three-year statutory period had run. Complaint ¶ 7(a), (d). Three of the instances in the complaint fail to state any dates of occurrence, and therefore are not in compliance with section 13's requirement of affirmative pleading. Complaint ¶ 7(b), (c), (g). The remaining three instances in the complaint are within the three-year pe-

riod, having occurred in June, 1983, March, 1984, and February, 1985. Complaint ¶ 7(e), (f), (h). However, plaintiff has not affirmatively pled the facts necessary to trigger the three-year limitations period, namely, that the defendants fraudulently concealed material facts and thus prevented plaintiff from discovering the alleged violations. If no such concealment occurred, and the plaintiff should have, in the exercise of due diligence, discovered the violation, then the one-year limitations period applies and all of plaintiff's section 12(2) action is barred since the latest date of alleged misrepresentation, February, 1985, occurred more than one year before this action was filed in May, 1986.

Because portions of plaintiff's complaint raise issues of fact that may support a section 12(2) action if pled in compliance with section 13, the Court will dismiss Count II of the complaint without prejudice and will grant plaintiff leave to amend.

### C. Section 17(a) Claim

■ Count III of plaintiff's complaint alleges a violation of section 17(a) of the 1933 Act. However in the Eighth Circuit there is no private right of action for a violation of Section 17(a) of the 1933 Act. *Shull v. Dain, Lakman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977); *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Nick v. Shearson/American Express, Inc.,* 612 F.Supp. 15, 18 (D.Minn. 1984). Therefore Count III will be dismissed with prejudice.

### D. NASD and NYSE Violation Claims

■ Count VII of plaintiff's complaint alleges that defendants' actions violated the rules of the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE), in which the defendant held membership. The Ninth and Eleventh Circuits have held that the NYSE and NASD rules do not confer a private cause of action. *Thompson v. Smith Barney, Harris Upham & Co.,* 709 F.2d 1413, 1419 (11th Cir.1983); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 679–81

(9th Cir.1980). In addition, the Court and three other judges in the District of Minnesota have held that a private cause of action does not lie for violations of NASD and/or NYSE rules. *See Baden v. Craig-Hallum, Inc. and DeWayne Derksen,* 646 F.Supp. 483, 491 (D.Minn.1986) (MacLaughlin, J.). *See also Corbey v. Grace,* 605 F.Supp. 247, 251–52 (D.Minn.1985) (Murphy, J.) (NASD rules); *Gustafson v. Strangis,* 572 F.Supp. 1154 (D.Minn.1983) (Alsop, J.) (NYSE and NASD); *Nelson v. Hench,* 428 F.Supp. 411, 420 (D.Minn.1977) (Larson, J.) (NASD and NYSE). Accordingly, plaintiff's count VII will be dismissed.

### E. Plaintiff's Count IV and Counts IX through XIII

Plaintiff's Count IV claims involve violations of the Securities Exchange Act of 1934. Plaintiff's Counts IX through XIII are RICO claims. Defendant has moved for a stay of proceedings on these claims pending arbitration. Defendant makes the same motion for a stay of plaintiff's state law claims, Counts V, VI, and VIII.

■ The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.,* governs arbitration agreements made in contracts which involve transactions implicating interstate commerce. Under section 2 of the FAA, a written arbitration clause in a contract:

> to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 3 permits the Court to stay proceedings pending arbitration if the Court is "satisfied that the issue involved ... is referable to arbitration" under an arbitration agreement. 9 U.S.C. § 3. If a party to an agreement refuses to arbitrate, the other party may bring an action to compel arbitration, and the Court after hearing the parties and "being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue" shall direct the parties

to arbitrate. 9 U.S.C. § 4. The courts have recognized that the FAA was designed to alleviate traditional judicial hostility to arbitration and to establish a federal policy in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). By its terms, the FAA does not provide for discretion, but rather mandates that the district courts shall direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). In addition, the courts have recognized that while the central concern in addressing a motion to compel arbitration is the intent of the parties, the FAA dictates that questions of arbitrability be addressed with healthy regard for the federal policy favoring arbitration; doubts regarding the scope of the agreement should be resolved in favor of arbitration. *Mitsubishi*, 105 S.Ct. at 3354. The parties' intentions control but those intentions are generously construed to support arbitrability. *Mitsubishi*, 105 S.Ct. at 3354.[1]

■ In order to prevail in a motion to compel arbitration a party must satisfy a three part test. The moving party bears the burden of establishing the existence of (a) an agreement to arbitrate, (b) arbitrable claims, and (c) no waiver of the right to arbitrate. *McMahon v. Shearson/American Express, Inc.*, 618 F.Supp. 384, 386 (S.D.N.Y.1985); *reversed on other grounds*, 788 F.2d 94 (2d Cir.1986). In the case at bar, defendants have moved to compel arbitration of plaintiff's Securities Ex-

change Act claims, RICO claims, and state law claims.

### 1. Plaintiff's Count IV Claims

Count IV of plaintiff's complaint alleges violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rules 10b–5 and 10b–16. Defendants allege that proceedings on both claims should be stayed pending arbitration, and in the alternative, that the 10b–16 claim should be dismissed.

### a. The 10b–5 Claim

■ This claim in Count IV is clearly based on a controversy arising out of or relating to the customer margin agreement, which by its own terms makes such claims subject to arbitration. Subsequent to the Supreme Court's 1985 decision in *Dean Witter Reynolds, Inc. v. Bird*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the question whether 10b–5 claims are arbitrable has split the courts. In *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 795 F.2d 1393 (8th Cir.1986), the United States Court of Appeals for the Eighth Circuit held that such claims are arbitrable. Accordingly, the Court will stay proceedings on the plaintiff's 10b–5 claim pending arbitration.

### b. Rule 10b–16 Claims

Count IV of plaintiff's complaint also alleges a violation of Rule 10b–16, 17 C.F.R. § 240.10b–16, which was promulgated under section 10(b) of the Securities Exchange Act of 1934. Rule 10b–16 provides in relevant part:

> ■ the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination;
> ■ in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims;
> ■ where the contract contains an arbitration clause, there is a presumption of arbitrability.

*See AT & T*, 106 S.Ct. at 1418–19.

---

1. The operative principles holding sway in this area of the law were initially given voice in a series of cases known as the *Steelworkers Trilogy*, and were recently reaffirmed in *AT & T Technologies, Inc. v. Communications Workers of America*, —— U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In *AT & T* the Court construed the *Trilogy* as giving rise to four governing principles:

> ■ arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit;

(a) It shall be unlawful for any broker or dealer to extend credit, directly or indirectly, to any customer in connection with any securities transaction unless such broker or dealer has established procedures to assure that each customer:

(1) Is given or sent at the time of opening an account, a written statement or statements disclosing (i) the conditions under which an interest charge will be imposed; (ii) the annual rate or rates of interest that can be imposed; (iii) the method of computing interest; (iv) if rates of interest are subject to change without prior notice, the specific conditions under which they can be changed; (v) the method of determining the debit balance or balances on which interest is to be charged and whether credit is to be given for credit balances in cash accounts; (vi) what other charges resulting from the extension of credit, if any, will be made and under what conditions; and (vii) the nature of any interest or lien retained by the broker or dealer in the security or other property held as collateral and the conditions under which additional collateral can be required.

17 C.F.R. § 240.10b–16. Defendants move for dismissal of plaintiff's Rule 10b–16 claim on two alternative grounds. First, defendants argue that no private cause of action exists under Rule 10b–16. Second, defendants contend that plaintiff has inadequately pled a Rule 10b–16 violation.

The courts have split on the question of whether a private cause of action lies for violations of Rule 10b–16. *See* cases holding that private cause of action does lie: *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352 (11th Cir.1985); *Slomiak v. Bear Stearns & Co.*, 597 F.Supp. 676 (S.D.N.Y.1984); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534–39 (9th Cir.1984); *Liang v. Dean Witter & Co.*, 540 F.2d 1107, 1113 n. 25 (D.C.Cir.1976); *Abeles v. Oppenheimer & Co.*, 597 F.Supp. 532 (N.D.Ill.1983); and cases holding that private action does not lie: *Furer v. Pain Webber, Jackson & Curtis, Inc.*, CCH Fed. Sec.L.Rep. ¶ 98,701 (C.D.Cal.1982); *Etablissement Tomis v. Shearson Hayden Stone Inc.*, 459 F.Supp. 1355 (S.D.N.Y. 1978). In *Robertson v. Dean Witter*, 749 F.2d at 536–39 (9th Cir.1984), the United States Court of Appeals for the Ninth Circuit held that a private cause of action *does* lie under Rule 10b–16 for the following reasons:

(a) a *strong presumption* arises that Rule 10b–16 provides the private right of action which exists generally for section 10(b);

(b) there is no indication that the Securities Exchange Commission intended to prohibit private actions under Rule 10b–16, and what evidence of the SEC's intentions that is available points to a contrary conclusion;

(c) Rule 10b–16 is reasonably related to the general anti-fraud purposes of section 10(b), in that Rule 10b–16 was designed as a consumer disclosure provision to *protect investors*, not as an internal brokerage regulation;

(d) Rule 10(b) is a catalogue of the kind of disclosures a customer might consider material with respect to his margin account, and information which rule 10b–16 requires that the broker divulge to customers is significant to a customer's investment decisions.

*See Robertson*, 749 F.2d at 534–39.[2]

In *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939 (3d Cir.1985), the United States Court of Appeals for the Third Circuit sided with the Ninth Circuit

---

**2.** The *Robertson* court stated that in determining whether a regulation gives rise to a private cause of action the two-part test of *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 679 (9th Cir. 1980) must be met. The *Jablon* test gives rise to a two-part inquiry: (1) whether Congress delegated authority to establish rules implying a private cause of action; and (2) whether the rule in question was drafted such that a private cause of action may legitimately be implied. The first part of the *Jablon* test is met because it has long been accepted that section 10(b) confers a broad grant of authority on the SEC. *Robertson*, 749 F.2d at 536. The *Robertson* court held that the second prong of the *Jablon* test had been met, based on the factors cited above.

in finding that Rule 10b–16 actions are federally cognizable. The *Angelastro* court declared:

We agree with the Ninth Circuit that failure to disclose the credit terms of a margin account can constitute a "manipulative or deceptive device or artifice" within the meaning of the statute. *See Robertson,* 749 F.2d at 538–39; *see also Liang,* 540 F.2d at 1113 n. 25; *Abeles v. Oppenheimer,* 597 F.Supp. at 536. The credit terms charged by a brokerage firm may be of substantial significance in an investor's decision whether to purchase securities either on margin or at all. Because the cost of margin payments, as well as the method of their calculation, may cause an investor to purchase more securities than he or she otherwise might buy and may also increase the risks of trading on margin, nondisclosure of such information might serve as a fraudulent or deceptive device on investors....

.... As with Rule 10b–5, allowing a private right of action under Rule 10b–16 will advance the statutory goals of promoting full disclosure of material information and of protecting investors from fraudulent practices.

*Angelastro,* 764 F.2d at 949. In *Haynes v. Anderson & Strudwick, Inc.,* 508 F.Supp. 1303, 1318–22 (E.D.Va.1981), the United States District Court for the Eastern District of Virginia in a well-reasoned opinion set forth several additional factors which support the conclusion that Rule 10b–16 creates an implied private cause of action:

(a) Rule 10b–16 was promulgated as an analogue of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and Congress created an express private cause of action for noncompliance with the requirements of that Act;

(b) Since the purposes underscoring Rule 10b–16 and the Truth in Lending Act are the same, *i.e.,* full disclosure of the terms and conditions of credit extension, it logically follows that private actions, lie under Rule 10b–16 as they do under the Truth in Lending Act;

(c) There is no indication that a cause of action under Rule 10b–16 would be one traditionally relegated to state law, and securities brokerage customers are in the class for whose benefit the regulation was promulgated, thus, under the test of *Cort v. Ash,* 422 U.S. 66 [95 S.Ct. 2080, 45 L.Ed.2d 26] (1975), the implication of a private remedy is appropriate. *See Haynes,* 508 F.Supp. at 1319–22.

The case at bar is only the second case to present this issue to the Court. However, as the Court held in *Baden v. Craig-Hallum, Inc. and DeWayne Derksen,* 646 F.Supp. 483 (D.Minn.1986), on balance, Rule 10b–16 does give rise to a private cause of action. The factors and reasoning of *Robertson* and *Angelastro* courts are quite persuasive. As the Court stated in *Baden,*

The purpose of section 10(b) was to make unlawful a particular manipulative or deceptive device—the extension of credit with undisclosed terms and conditions. Rule 10b–16 directly advances that purpose by requiring full disclosure of credit terms and conditions before a broker or dealer may extend credit to any customer in connection with any securities transaction. Rule 10b–16 was designed as a customer disclosure provision to protect investors, *Robertson,* 749 F.2d at 539, accordingly, the implication of a private remedy under the Rule is fully consonant with congressional and SEC purposes and directives. Therefore, the Court finds that Rule 10b–16 does give rise to a private cause of action.

Slip op. at 13 (footnote omitted).

 Defendants alternatively argue that plaintiff has failed to adequately plead a Rule 10b–16 cause of action because there is no allegation in the complaint that the credit terms and margin agreements were not adequately disclosed. However, plaintiff's memorandum and affidavit on this motion assert additional facts in support of the Rule 10b–16 claim in the complaint, and under the liberal notice pleading rules of the federal courts, plaintiff's allegations, although conclusory, are adequate.

However, while the *Phillips* case holding that 10b–5 claims are arbitrable did not address 10b–16 claims, the same logic applies as in the case of 10b–5. Therefore, the Court finds that there is a private cause of action, made out by plaintiff, under Rule 10b–16, but the Court will stay proceedings on this claim pending arbitration.

## F. Plaintiff's RICO Claims

■ Plaintiff's Counts IX through XIII are RICO claims. Until recently, the courts had consistently held that RICO claims are nonarbitrable. *See Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 602 F.Supp. 867 (W.D.Pa.1985); *Jacabson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 605 F.Supp. 510 (W.D.Pa.1984); *Universal Marine Insurance Co. v. Beacon Insurance Co.*, 588 F.Supp. 735 (W.D.N. Car.1984); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561 (N.D.Cal.1984); *S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. 566 (S.D.N.Y. 1983), *aff'd.*, 745 F.2d 190 (2d Cir.1984) (*Samitri*). Influenced by the strong pro-arbitration language of several recent Supreme Court decisions, however, including *Byrd, Mitsubishi,* and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), many courts have held that RICO claims may be subject to compulsory arbitration.[3] In *Bale v. Dean Witter Reynolds, Inc.*, 627 F.Supp. 650 (D.Minn. 1986), Chief Judge Alsop concluded that RICO claims are arbitrable, relying primarily on the following factors:

(1) RICO does not include an anti-waiver provision and there is no indication that Congress intended to exempt RICO claims from the dictates of the FAA;

(2) a strong policy exists in favor of arbitration and courts are reluctant to disregard the parties' express agreement to arbitrate;

(3) the Supreme Court's recent decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) implicitly approved a construction of RICO as a "federal business tort statute" which implicates primarily private and not public interests, thus obviating the public policy concerns supporting an exclusively federal forum. *See Bale*, 627 F.Supp. at 654. Other reasons for holding RICO claims arbitrable cited by the courts include: RICO jurisprudence is in an evolving state, *Finn*, 610 F.Supp. at 1082–83; the broad language of the Supreme Court's *Mitsubishi* decision, holding that antitrust claims are arbitrable in the context of international relations, carries significance in domestic RICO claims, *Smokey Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 785 F.2d 1274 (5th Cir.1986); and the majority of civil RICO claims today do not impact on the general society or involve vital national interest in the manner that the courts which have held RICO claims to be nonarbitrable anticipated; *Bale*, 627 F.Supp. at 654. In addition, the Eighth Circuit's recent *Phillips* decision, holding that federal securities law claims are arbitrable, intimates that the circuit court may conclude that RICO claims are arbitrable as well.[4]

---

**3.** Cases holding RICO claims arbitrable include: *Bale v. Dean Witter Reynolds, Inc.*, 627 F.Supp. 650 (D.Minn.1986); *Development Bank of the Phillippines v. Chemtex Fibers, Inc.*, 617 F.Supp. 55 (S.D.N.Y.1985); *Baker v. Paine Webber Jackson & Curtis, Inc.*, 637 F.Supp. 419, CCH Fed. Sec.L.Rep. ¶ 92,757 (D.N.J. Apr. 10, 1985); *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1985–86 Fed.Sec.L.Rep. (CCH) ¶ 92,276 (W.D.Pa.1985) [Available on WESTLAW, DCTU database]; *Finn v. Davis*, 610 F.Supp. 1079, 1087 (S.D.Fla.1985).

**4.** In *Phillips* the Eighth Circuit declined to follow the Second Circuit's recent decision in

*McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 98 (2d Cir.1986), holding that federal securities law claims are nonarbitrable. The *McMahon* court also found RICO claims to be nonarbitrable. *McMahon*, 788 F.2d at 98–99. Because many of the policy concerns undergirding the securities law arbitrability issue also undergird the RICO arbitrability issue, it is not unreasonable to believe that the Eighth and Second Circuits will diverge on the RICO issue as well.

In addition, the Fifth Circuit has shown signs that it believes that RICO claims are arbitrable, although the issue has not been placed squarely

Based on the above, the Court has held RICO claims are arbitrable, *see Splinter v. Paine Webber,* CIVIL 4–85–613 (D.Minn. Aug. 26, 1986) (MacLaughlin, J.), and the Court so holds in this case as well.

### G. Plaintiff's State Law Claims

■ Counts V, VI, and VIII of plaintiff's complaint allege violations of Minnesota statutes and common law. Count VI alleges violations of state securities law, Minn.Stat. § 80A. Count V alleges common law fraud, deceit, misrepresentation, and conversion. Count VIII alleges breach of fiduciary duty and breach of contract. The customer margin agreement provides that all claims "arising out of or relating to this agreement or the breach thereof shall be settled by arbitration." The plaintiff's state law claims clearly arise out of or relate to the customer agreement and are therefore arbitrable. Moreover, the Minnesota Supreme Court has held that claims brought under Minn.Stat. § 80A (Minnesota Blue Sky state securities law) and related common-law claims such as fraud, negligence and breach of fiduciary duty can be compelled into arbitration under pre-dispute agreements. *Fairview Cemetery Association v. Eckberg,* 385 N.W.2d 812, 817–18 (Minn.1986). Therefore, the Court will stay proceedings on these claims pending arbitration.

Based on the foregoing, and upon all the files, records, and proceedings in this matter,

IT IS ORDERED that:

1. defendants' motion to dismiss Count I is granted;

2. defendants' motion to dismiss Count II is granted as to the time-barred claims; and the motion to dismiss the remaining claims is denied provided that plaintiff shall have ten days from the date of this order to amend Count II;

3. defendants' motion to dismiss Count III is granted;

4. defendants' motion to dismiss Count VII is granted; and

5. defendants' motion to stay proceedings pending arbitration is granted as to Counts IV, V, VI, VIII, IX, X, XI, XII, and XIII.

before the court. *See Smokey Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 785 F.2d 1274, CCH Fed.Sec.L.Rep. ¶ 92,767 (5th Cir. May 13, 1986).