**FIRST PRESBYTERIAN CHURCH OF MANKATO, MINNESOTA, and Kirsten Orvick, Plaintiffs,**

v.

**JOHN G. KINNARD & COMPANY, INCORPORATED and Gary Lefkowitz, Defendants.**

Civ. A. No. 3–94–1024.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 17, 1995.

Richard A. Lockridge, Gregg M. Fishbein, Jean K. Janes and Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN, appeared, for and on behalf of plaintiffs, First Presbyterian Church of Mankato, MN and Kirsten Orvick.

Frank A. Taylor, Steven M. Phillips and Popham, Haik, Schnobrich & Kaufman, Minneapolis, MN, appeared, for and on behalf of defendants, John G. Kinnard & Co., Inc. and Gary Lefkowitz.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

This matter came before the Honorable Michael J. Davis on December 7, 1994. Defendants, John G. Kinnard & Company, Incorporated and Gary Lefkowitz ("Defendants") filed a Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Motion") or, in the alternative, a Motion for a More Definite Statement and Striking Allegations. For the reasons set forth below, Defendants' Motions are *denied* in their entirety.

## FACTS

On August 24, 1994, Plaintiffs, First Presbyterian Church of Mankato, Minnesota, and Kirsten Orvick ("Plaintiffs") filed a putative securities class action on behalf of themselves and all others who purchased units of First Secured Mortgage Investors XVI ("FSMI XVI") from or through Defendant John G. Kinnard & Company, Incorporated ("Kinnard"). Plaintiffs have filed this action under section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b–5; section 12(2) of the Securities Act of 1933 ("Securities Act"); and the Minnesota Securities Act and Minnesota common law because of alleged improprieties in connection with the offer and sale of units in FSMI XVI offered by Citi–Equity Group, Inc. ("Citi–Equity").

In the mid–1980's, Lefkowitz and Citi–Equity solicited developers throughout the United States to construct a series of low-income housing projects which would qualify for tax

credits. Lefkowitz and Citi–Equity sought to form general partnerships to purchase the housing complexes and then run them. Additionally, Lefkowitz and Citi–Equity raised approximately $100 million through a number of limited partnerships which the two parties syndicated in order to obtain additional financing for the project.

Lefkowitz and Citi–Equity also marketed FSMI offerings in order to raise capital to build specific housing projects sponsored by Citi–Equity. Through these FSMI offerings, Lefkowitz and Citi–Equity raised over $30 million.

Plaintiffs allege Kinnard was employed by Lefkowitz and Citi–Equity to assist them in promoting and selling FSMI units to investors. Plaintiffs state that they purchased FSMI XVI units based in part on Kinnard's representations of the investment's low risk and high returns. They further allege that Kinnard also told them that all of Citi–Equity's similar offerings were performing well and that all of Citi–Equity's similar offerings had met or exceeded projected returns. Kinnard also allegedly assured Plaintiffs Citi–Equity had secured permanent financing for the housing projects and that the investment would net an annual return of 10.25%/month.

Plaintiffs contend that they later discovered that Kinnard's representations were not true and that the funds they invested were diverted and dissipated by Defendant Gary Lefkowitz and his corporation, Citi–Equity. Specifically, Plaintiffs argue that Kinnard, in its promotion of the FSMI XVI units, failed to reveal to the prospective investors that in late 1992 Kinnard became suspicious of Citi–Equity deals because investors had stopped receiving annual financial reports. Additionally, Plaintiffs allege that Kinnard representatives visited some of the housing sites and discovered that nothing had been built, but failed to communicate this fact to the investors and, in fact, continued to convince investors to purchase FSMI XVI units. The Citi–Equity projects were apparently based on criminal misrepresentations by Lefkowitz and Citi–Equity to procure the much-needed tax credits for the project.

According to Plaintiff's Complaint, the State Bar of California sanctioned Lefkowitz for violations of the California Business and Professions Code and Rules of Professional Conduct and revoked his license to practice law for one year. The State of Minnesota had also revoked Lefkowitz's broker-dealer registration for selling unregistered securities and making fraudulent statements about the Securities and Exchange Commission. Plaintiffs conclude that, despite these warning signs about Citi–Equity and Lefkowitz, Kinnard continued to promote the FSMI XVI units to investors.

In response to Plaintiff's allegations, Defendants argue that these alleged omissions and misrepresentations amount to general statements and opinions which cannot support claims alleging securities violations absent an allegation that Kinnard did not honestly hold the beliefs at the time the statements were made. Additionally, Defendants argue that Plaintiffs have failed to allege the fraudulent misrepresentations and omissions with the particularity required by rule 9(b). On these bases, Defendants have moved this Court to dismiss Plaintiff's Complaint.

## DISCUSSION

Rule 12(b)(6) requires dismissal if the allegations in the Complaint fail to state a legally cognizable claim. Dismissal is appropriate if there is no set of facts within Plaintiff's pleadings which would entitled Plaintiffs to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing this Motion to Dismiss, the Court must presume "well-pleaded" factual allegations as true and should construe all reasonable inferences from those allegations in favor of Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A. Section 10(b) Claims

To state a claim under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, a Complaint must allege: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) upon which the plaintiff relied; and (5) that proximately caused the plaintiff's injury. *See* 15 U.S.C. § 78j(b); *In*

*re Flight Transp. Corp. Sec. Litig.,* 593 F.Supp. 612, 617 (D.Minn.1984). Under Rule 10b–5, it is unlawful to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made not misleading. 17 C.F.R. § 240.10b–5.

In determining whether a statement is actionable, courts scrutinize the nature of the statement to determine whether it was false when made and look to whether the representation suggested reliability or was made in good faith. *In re Synergen, Inc. Securities Litig.,* 863 F.Supp. 1409, 1415 (D.Colo.1994). Defendants argue that many of the alleged misrepresentations set forth in the Complaint are simply expressions of opinion amounting to mere puffery or sales talk, and thus are not actionable. Examples include: (1) "Earlier partnerships syndicated by Citi–Equity were performing well." Complaint, para. 31(h); (2) "The investment [in FSMI XVI] was very low risk." Complaint, para. 32(a); (3) "Citi–Equity had no troubled properties." Complaint, para. 32(e); (4) "The investment was safe because it was backed by real estate but was not an investment in the real estate itself." Complaint, para. 32(i).

In support of their assertion, Defendants cite to a number of cases which have held that statements about future events and expressions of opinion are not actionable under the Exchange Act. *See e.g., Hershfang v. Citicorp,* 767 F.Supp. 1251, 1256 (S.D.N.Y. 1991); *Friedman v. Mohasco Corp.,* 929 F.2d 77, 79 (2nd Cir.1991); *Polin v. Conductron Corp.,* 552 F.2d 797, 805 (8th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). In *Friedman* and in *Polin,* for example, the courts found that the documents offered to shareholders were accompanied by cautionary language that did not guarantee any particular return.

Plaintiff argues that these cases are factually distinguishable from the present action. They argue that Kinnard did not communicate such cautionary language to investors when promoting the FSMI XVI units.

The thrust of the 10b–5 claim turns on what Kinnard knew at the time it marketed the Citi–Equity investments to prospective investors. The thrust of Defendants' arguments are that Kinnard's alleged misrepresentations are not actionable simply because they were merely expressions of opinion, belief or expectation or statements about future events and are therefore not actionable. Contrary to Defendants' allegations, however, the analysis does not end there.

It is certainly true that statements such as "performing well" or "low risk" are plainly expressions of opinion and, standing alone, are not actionable. However, as Plaintiff argues, the court must view the statements in context to determine whether Plaintiffs' claims are sufficient. *In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 371 (3d Cir.1993). Defendants merely attack the statement in Plaintiffs' Complaint without revealing how Plaintiffs would know from the context of the statements that they should not rely on them.

In their Complaint, Plaintiffs allege that Kinnard representatives became suspicious of Citi–Equity deals because investors had stopped receiving annual financial reports. Complaint, para. 37. They also allege that Kinnard representatives visited some of the housing sites and discovered that nothing had been built. Complaint, para. 37. Given Kinnard's close working relationship with Citi–Equity and Citi–Equity's employment of a number of Kinnard personnel, Plaintiffs have raised a significant issue of fact as to whether Kinnard knew of the financial and legal difficulties of Citi–Equity. Additionally, the Court is hard-pressed to understand why Kinnard continued to promote the FSMI XVI units as low-risk investments without apprising Plaintiffs of Kinnard's discoveries that the housing project had not begun or that investors were concerned because no annual reports had been received. Viewed in this light, Kinnard's continued affirmation that earlier partnerships syndicated by Citi–Equity were performing well and that Citi–Equity had no troubled properties could, in fact, be considered an untrue statements of material fact or omission under 10b–5.

Defendants fail to address whether Kinnard knew or had reason to know about the financial and legal troubles of Gary Lefkow-

itz and Citi–Equity during the time it was marketing the FSMI XVI units. They argue that Plaintiffs' allegations are nothing more than mere predictions. They further characterize Plaintiffs' allegations as "conclusory" because they fail to allege the "who, what, when, where, and how" and fail to conform to the particularity requirements of fraud under rule 9(b).

The court disagrees. Under rule 9(b), the circumstances constituting fraud or mistake must be concrete and sufficiently particularized to give Defendants notice of "what conduct is complained of and to prepare a defense to such claim of misconduct." *Goldman v. Belden*, 98 F.R.D. 733, 735 (W.D.N.Y. 1983). The specific instances of possible misconduct which Plaintiffs have set forth in their Complaint suffice to meet this burden. Kinnard's failure to inform Plaintiffs of the aforementioned material facts which Kinnard had knowledge of are more than sufficient to withstand a rule 9(b) inquiry.

To satisfy the element of scienter under 10b–5, Plaintiffs must allege facts that "give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 775–76 (2d. Cir.1991). In asserting a failure to adequately plead scienter, Defendants rely in part on *Center Savings & Loan Ass'n v. Prudential–Bache Securities, Inc.*, 679 F.Supp. 274 (S.D.N.Y.1987) which they argue is "remarkably similar" to the case at bar. In *Center Savings,* the court dismissed Plaintiff's securities fraud claims because Plaintiff had failed to demonstrate that Plaintiff knew or acted recklessly with respect to Defendant's financial difficulties. The court held that, at most, Plaintiff had alleged negligence because Plaintiff only argued that Prudential Bache "should have known" of the company's dilemmas in the course of due diligence, but never demonstrated knowledge or reckless disregard. *Id.* at 277–78.

Contrary to Defendants' allegation, the facts of *Center Savings* are significantly different from those of the present action. This is not simply a case of failure to properly investigate the financial dealings of a company that a brokerage firm is marketing. Kinnard knew that the housing projects were not being erected. Kinnard knew that investors were concerned about Citi–Equity's projects. Most importantly, Defendants do not refute or address the fact that Kinnard employees worked directly for Citi–Equity. As employees of Citi–Equity, the court finds it difficult to believe that those employees did not know that the company president and sole owner, Gary Lefkowitz, had been found guilty of violations of the California Business and Professions Code and Rules of Professional Conduct. Nor can the court ignore these employees' failure to divulge to Plaintiffs any information regarding the fact that the president and sole owner of Citi–Equity was censured, fined and assessed costs by the NASD in 1988 for violating the Fair Practice Rules, was the subject of a June 17, 1986 Cease and Desist Order for sale of securities without registration and was expelled from the National Association of Securities Dealer on October 3, 1989. Finally, the court cannot accept Kinnard's argument that the Kinnard employees working for Citi–Equity did not know that Citi–Equity failed to obtain permanent financing for their projects when Kinnard represented to Plaintiffs that Citi–Equity had secured $18 million from a company for the permanent financing of the housing projects.

Defendants' characterization of Plaintiffs' allegations as those of mere negligence is wrong; Plaintiffs' allegations successfully establish, at the very least, reckless disregard by Kinnard of a company whose president and sole owner had committed a plethora of securities violations. *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 268–69 (2d Cir. 1993), *cert. denied sub nom.* As the Court in *Center Savings* stated, "Whether such declarations be regarded as statements of fact or opinion, their utterance does not state a claim for securities fraud unless the plaintiff also alleges that at the time of the declarations, the views expressed were not honestly held or ... were recklessly arrived at." 679 F.Supp. at 276.

As to the causation element, Plaintiffs have adequately demonstrated that "some causal nexus" exists between Kinnard's conduct and Plaintiffs' loss. *In re Control Data Corp. Sec. Litig.*, 933 F.2d 616, 619 (8th Cir.), *cert.*

*denied sub nom.* The Complaint demonstrates that Plaintiffs relied upon Defendants' representations in purchasing units of FSMI XVI units, thereby satisfying the "transaction causation" element of a 10b–5 claim. *Id.* Additionally, Plaintiffs have also demonstrated "loss causation" by alleging a sufficient nexus between Kinnard's alleged violations and Plaintiffs' pecuniary losses.

In presuming the validity of the factual allegations set forth in Plaintiffs' Complaint, the allegations are sufficient to adequately plead a cause of action under rule 10(b) of the Securities Exchange Act. Accordingly, the court denies Defendants' Motion to Dismiss under rule 10(b).

### B. Section 12(2) Claims

■ Section 12(2) of the Securities Act of 1933 provides that any person who offers or sells a security by means of a material misstatement or omission in an oral communication or prospectus may be liable to his or her purchaser. 15 U.S.C. § 77l(2); *Finne v. Dain Bosworth, Inc.,* 648 F.Supp. 337, 341 (D.Minn.1986). Unlike claims under section 10(b), claims under section 12(2) do not require proof of scienter or reliance. Because Plaintiffs have adequately alleged violations under rule 10(b), these allegations are sufficient to support a cause of action under section 12(2). Accordingly, the court denies Defendants' Motion to Dismiss under section 12(2).

### C. Minnesota Securities Act Claims

■ The Minnesota Securities Act, Minn. Stat. § 80A.01 *et seq.,* is the state's counterpart to federal Rule 10b–5 and the substantive requirements are the same. *See, Minneapolis Employees Retirement Fund v. Allison–Williams Co.,* 519 N.W.2d 176, 180 (Minn.1994). Accordingly, the court denies Defendants' Motion to Dismiss under the Minnesota Securities Act for the reasons stated above.

### D. State Law Claims

#### 1. Negligent Misrepresentation

■ An individual or entity commits the tort of negligent misrepresentation when:

in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Nordale, Inc. v. Samsco, Inc.,* 830 F.Supp. 1263, 1270–71 (D.Minn.1993) (quoting *Florenzano v. Olson,* 387 N.W.2d 168, 174 n. 3 (Minn.1986)). Plaintiff must also establish a pecuniary loss was caused by its justifiable reliance on the alleged misrepresentation. *Nordale,* at 1271 (citing *Conwed Corp. v. Employers Reinsurance Corp.,* 816 F.Supp. 1360, 1362 n. 3 (D.Minn.1993) (citations omitted)).

■ Plaintiffs have sufficiently alleged that Kinnard failed to exercise reasonable care in communicating the information regarding the FSMI XVI units to its investors. Additionally, the Complaint also fulfills the other requisite elements of a claim of negligent misrepresentation that Kinnard entered into this transaction for pecuniary gain, that it supplied false information to Plaintiffs and Plaintiffs detrimentally relied on these alleged misrepresentations. Accordingly, the court *denies* Defendants' Motion to Dismiss Plaintiffs' claim for negligent misrepresentation.

#### 2. Breach of Fiduciary Duty

■ Defendants allege that a licensed stockbroker owes his customer only the duty to exercise due care in executing all instructions expressly given to him by the principal. *Rude v. Larson,* 296 Minn. 518, 207 N.W.2d 709, 711 (1973). For the aforementioned reasons, Plaintiffs' Complaint adequately alleges a breach of that duty. Accordingly, this court denies Defendants' Motion to Dismiss Plaintiffs' claim for breach of fiduciary duty.

#### 3. Class Arguments

Defendants also move to dismiss that part of the Complaint which seeks to assert common law claims on a class basis. This aspect

of the motion is premature, as Plaintiffs have not yet moved for class certification. Accordingly, Defendants arguments will be reserved until such time as a motion for class certification is before the court.

## ORDER

Accordingly, based upon the above, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the motions of Defendants for dismissal pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure or in the alternative for a more definite statement are DENIED. Defendants' motion to strike allegations pertaining to class certification is RESERVED until such time as Plaintiffs move for class certification.