**Kevin and Joanne JOHNSON by Shirley Johnson, their parent and next friend, et al., Plaintiffs, on Behalf of themselves and others who are similarly situated,**

**v.**

**Edwin L. HUNGER, as Superintendent of Schools of the City of Poughkeepsie, New York, et al., Defendants.**

**No. 66 Civ. 3065.**

United States District Court
S. D. New York.
March 22, 1967.

Paul B. Zuber, Croton-on-Hudson, N.Y., for plaintiffs.

Lloyd L. Rosenthal, Poughkeepsie, N.Y., for defendants Hunger and Board of Education.

Allan E. Rappleyea, Poughkeepsie, N. Y., Corp. Counsel, for City of Poughkeepsie.

MANSFIELD, District Judge.

In this action plaintiffs claim that defendants have intentionally promoted and maintained a neighborhood school policy in the City of Poughkeepsie, New York, the purpose and effect of which is to segregate Negro children from white children in the Poughkeepsie public school system. The original summons and complaint were served on September 29, 1966. Plaintiffs thereafter moved for a preliminary injunction, and two of the defendants moved to dismiss the complaint. In granting dismissal with leave to serve an amended complaint, Judge MacMahon found the original complaint to be "an amorphous, vague, confused structure which can only result in a colossal waste of time" and held that the "complaint utterly fails to contain a plain and concise statement of facts sufficient to constitute a claim for relief." Plaintiffs thereafter filed an amended complaint and once again have moved for a preliminary injunction. The same defendants once again have moved to dismiss the complaint.

The amended complaint represents no improvement over its predecessor. It simply renumbers and repeats most of those paragraphs of the original complaint that were found objectionable by Judge MacMahon, adding more prolix allegations. For instance, Paragraphs 14 to 24 of the original complaint appear as Paragraphs 38 through 48 of the amended complaint. Paragraph 11, which refers to the "economic status" of families having children in the Poughkeepsie school system, ends in mid-air. Paragraph 25 contains a jumbled reference to figures pertaining to the economic status of white and Negro families in Poughkeepsie without indicating its relevance to the claim of racial segregation; Paragraph 27 refers to "those acts set forth 'Paragraph 36' supra", which contains no allegations of any acts whatsoever; Paragraph 28 refers to various statistics contained in a "Poughkeepsie Planning Board Report" without relating them to the plaintiffs' claim and Paragraph 29 then alleges that the "acts set forth both over [sic] and covert are responsible to a major degree for the situation set forth in 'Paragraph 28'", which is meaningless; Paragraphs 31 through 35 ramble on at length with respect to a "Poughkeepsie Urban Renewal Agency" without stating what claim, if any, is made. For example, Paragraph 35 contains the following sentence:

"This project will be racially segregated and the school will also be racially segregated as of the 640 families displaced by the Urban Renewal are Negro and these families because of no other suitable housing available in the City of Poughkeepsie will be forced back into the Urban Renewal Area."

Under Rule 8(a), F.R.Civ.P., which provides that the complaint "shall contain * * * a short and plain statement of the claim showing that the pleader is entitled to relief", a plaintiff is entitled to considerable latitude in stating his cause of action, provided the complaint gives reasonable notice of the claims asserted by him. The amended complaint here, however, exceeds the bounds permitted under that rule. For the most part it represents a confusing and foggy mixture of evidentiary statements, arguments and conclusory matter. If it were permitted to stand, the defendants would be unable to file meaningful answers to much of what is alleged. They would be forced to reply in kind by pleading further prolix matter. The issues would be obscured and remain undefined. This would lead to wasteful and unnecessary pretrial discovery, after which a pretrial judge would at some point face the necessity of requiring the plaintiffs to clarify and redefine their contentions. If the plaintiffs desire to prosecute this action, they should file a complaint that meets Judge MacMahon's objections, stating their claims in clear, understandable language.

Plaintiffs' motion for preliminary injunctive relief, being based in part upon

the complaint, not only suffers from the above-mentioned deficiencies in pleading, but is unsupported by affidavit or other proof from a person having personal knowledge of the facts. The sole affidavit offered in support of the motion is that of plaintiffs' attorney, Paul B. Zuber, Esq., who fails to show any personal knowledge of the facts. Although he states that he has made an "exhaustive study of the public school system" of Poughkeepsie, his affidavit fails to state the source of his information or any basis for a first-hand knowledge of the facts. It appears that he neither resides nor practices his profession in the vicinity of Poughkeepsie, and the Superintendent of Schools of the City School District of the City of Poughkeepsie, Edwin L. Hunger, states under oath that Mr. Zuber has never visited the Poughkeepsie schools and has never talked with him, his administrative assistant, any principal in the school system, or anyone else in an administrative capacity, with repect to the matters forming the basis for the plaintiffs' application.

Despite frequent excursions into hearsay evidentiary matters of doubtful relevance, neither the complaint nor the affidavit furnish facts supporting the general conclusory allegation that the defendant, through the alleged "neighborhood school policy", maintains and perpetuates a racially segregated school system in Poughkeepsie. The affidavit of Edwin L. Hunger, Superintendent of Schools, on the other hand, furnishes facts and statistics refuting plaintiffs' conclusory allegations. For instance, in response to plaintiffs' claim that 95% of the Negro pupils attending a public junior high school in the City of Poughkeepsie are required to attend the Morse Junior High School and that 95% of the white pupils attend the Forbus Junior High School, the Hunger affidavit reveals the following:

|  | White Students | Negro Students |
|---|---|---|
| Morse Jr. High School | 270 — 59% | 184 — 41% |
| Forbus Jr. High School | 664 — 86% | 106 — 14% |

Turning to the elementary school level, plaintiffs' contention—again asserted only in general language—that defendants have gerrymandered the Poughkeepsie School District lines to concentrate Negro students in the Warring, Elsworth and Columbus schools, is answered by the following statistics furnished under oath by the Superintendent of Schools as to the attendance of Negro and white students at these three schools:

|  | White Students | Negro Students |
|---|---|---|
| Warring | 180 — 32% | 379 — 68% |
| Elsworth | 130 — 42% | 181 — 58% |
| Columbus | 136 — 40% | 209 — 60% |

In response to plaintiffs' contention that a majority of the students moved from the Warring school, the students of which are predominantly Negro, were white students and that this increased the remaining Negro concentration, the Superintendent of Schools reveals that of 32 students transferred from the Warring school to the Smith school, 25 were Negro and only 7 were white. In view

of the complete failure of the moving papers to furnish any facts supporting plaintiffs' claim that defendants threaten to select and use school construction sites that will perpetuate racial segregation, it appears unnecessary to advert to this charge other than to note that the answering affidavit of the Superintendent of Schools denies the charge and points to a revision of the school system, already approved by the Board of Education, involving an estimated construction cost of $4,350,000 that would result in, among other things, a middle school for grades five through eight to be attended by all children, white and Negro, attending these grades in the relatively compact geographical area of Poughkeepsie.

Although the affidavit of Superintendent of Schools Edwin L. Hunger was filed on December 19, 1966, and plaintiffs' motion for preliminary injunctive relief was not heard until January 10, 1967, plaintiffs have not offered any affidavit or other proof contradicting in whole or in part the foregoing detailed attendance figures furnished under oath by the Superintendent of Schools. These attendance figures hardly indicate any racial imbalance, or segregation or concentration of Negro students. On the contrary, they reveal that in every school attended by Negroes there was also a very substantial percentage of white students, ranging from 59% to 86% in the two junior high schools and from 40% to 68% in the three elementary schools alleged to be the subject of Negro concentration. The situation represents a far cry from the 100% Negro attendance which was the subject of the Supreme Court's consideration in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the 94% Negro attendance at the Lincoln Elementary School in New Rochelle which was involved in Taylor v. Board of Education, 191 F.Supp. 181 (S.D.N.Y.), appeal dismissed, 288 F.2d 600 (2d Cir. 1961), and the situation presented in the Blocker v. Board of Education, 226 F.Supp. 208

(E.D.N.Y.1964), where 99.2% of the white children of a district attended all-white schools, while 100% of the Negro children attended a separate school.

Thus the moving papers not only fail to offer competent proof through affidavits of persons having first-hand knowledge of the facts but fail to furnish facts showing a *prima facie* case of racial segregation, existing or threatened, warranting the issuance of injunctive relief.

For the foregoing reasons the motion for preliminary injunctive relief is denied and the motion to dismiss is granted without prejudice.

So ordered.