In re **LIFECORE BIOMEDICAL, INC.** **SECURITIES LITIGATION.**

Civ. No. 4–92–955.

United States District Court, D. Minnesota, Fourth Division.

June 14, 1993.

Vance K. Opperman, Richard A. Lockridge, Schatz Paquin Lockridge Grindal & Holstein, Minneapolis, MN, Stuart H. Savett, Barbara A. Podell, Savett Frutkin Podell & Ryan, Philadelphia, PA, and Jack L. Chestnut and Karl L. Cambronne, Chestnut & Brooks, Minneapolis, MN, for plaintiffs.

Michael Douglas Olafson, Terrence Joseph Fleming, Lindquist & Vennum, Minneapolis, MN, and Arthur N. Abbey and Lee Squitieri, Abbey & Ellis, New York City, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion to dismiss plaintiffs' Consolidated Amended Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Procedure. Defendants also appeal from an order denying their motion to stay discovery entered by United States Magistrate Judge Floyd E. Boline, dated May 12, 1993. Based on the file, record and proceedings herein, and for the reasons stated below, the court holds that plaintiffs have failed to state a claim of securities fraud with sufficient particularity. The defendants' appeal of Magistrate Judge Boline's order is denied as moot.

## BACKGROUND

Defendant James W. Bracke ("Bracke") is the President, Chief Executive Officer and one of five directors of Lifecore Biomedical, Inc. ("Lifecore"), a Minnesota corporation. Lifecore develops, manufactures and markets sterile medical devices based on one of two natural biological materials, hyaluronate and hydroxylapatite. Hyaluronate is a water-retaining and lubricating carbohydrate that protects, cushions and moisturizes the body's soft tissues.[1] Lifecore has developed a method of producing purified hyaluronate which permits hyaluronate to be manufactured in large quantities. Currently, the primary application for Lifecore's hyaluronate is as a component in ophthalmic surgical solutions.

This litigation concerns Lifecore's Tenalure hyaluronate. Lifecore sells Tenalure to Ethicon, Inc. ("Ethicon"), a subsidiary of Johnson & Johnson, for testing in a soft tissue repair product intended to reduce post-surgical adhesions and scarring. Lifecore supplies Tenalure to Ethicon pursuant to a February 1989 supply agreement. Ethicon has been conducting human clinical tests

---

1. Hydroxylapatite is a mineral constituting 95 percent of human bone. Lifecore's hydroxylapatite products are not pertinent to this litigation.

since 1990.[2] Before Ethicon can commercially sell a hyaluronate-based anti-adhesion product in the United States, it must receive marketing approval from the Food & Drug Administration ("FDA").

On September 30, 1992, an Ethicon official stated that Ethicon was making efforts to develop alternatives to Lifecore supplying it with hyaluronate. The next day Bracke said there was no change in Lifecore's relationship with Johnson & Johnson and that Lifecore "was full steam ahead on preparing for this business."

On Monday, October 5, 1992, Lifecore announced that it had been informed by Ethicon after the close of market Friday, October 2, 1992, that a "partial statistical analysis of data" from Ethicon's human clinical testing of Tenalure "was not demonstrating anticipated levels of efficacy." Lifecore stated that both companies were "continuing to confer regarding the future direction of the ongoing clinical evaluation." Lifecore indicated that the companies had several options, "including further evaluation of the current hyaluronate product, bringing a second generation hyaluronate product to the clinic, or, discontinuing the project." Bracke stated that he was "optimistic" that the companies could continue to collaborate on the clinical project, although the time frame for the project was "likely to be extended."

On October 6, 1992, Bracke stated that the Tenalure test results probably would delay any marketing arrangement between Lifecore and Ethicon. Lifecore announced on November 16, 1992, that Ethicon, after a thorough review of program options, "has indicated that it will continue its development project, based upon Lifecore's sodium hyaluronate technology, to create a product for reduction of surgical adhesions." Lifecore stated that the "results of the clinical studies will be used to target new clinical evaluations to confirm the benefit of hyaluronate with a more significant level of activity." Lifecore also announced that the two companies agreed to extend their 1989 supply agreement.

The original complaint charging the defendants with securities fraud, common law fraud and negligent misrepresentation was filed within hours of Lifecore's announcement on October 5, 1992. Ten more class actions against defendants soon followed. Plaintiffs, purchasers of common stock of Lifecore between September 27, 1991, and October 5, 1992, filed a Consolidated Amended Complaint on March 4, 1993. Plaintiffs allege, based largely on information and belief, that defendants committed securities fraud by making optimistic predictions regarding the status of Ethicon's clinical testing of Tenalure and its ultimate marketability while concealing material information that made Tenalure's future less rosy.

Based on the "close working relationship" between Lifecore and Ethicon, plaintiffs allege that defendants were aware of the status of Ethicon's clinical testing of Tenalure or were reckless in not knowing such status given the importance of Ethicon to Lifecore's financial success. Plaintiffs contend that defendants concealed delays in the publicly announced timetable for the marketability of Tenalure. The complaint also alleges that by expressing continued optimism about the marketability of Tenalure, defendants led the investing public to believe that the ongoing clinical tests were proceeding without any problems when defendants knew or were reckless in disregarding that the tests were going poorly and that the results were in fact disappointing.

## DISCUSSION

### 1. Failure to State a 10b–5 Claim

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pled. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint for failure to state a claim only when it

---

**2.** Ethicon's animal studies, which began in 1987, demonstrated the efficacy of hyaluronate in animals.

appears the plaintiff cannot prove any set of facts that supports the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Accepting the factual allegations of the complaint as true, the court cannot conclude at this time that plaintiffs can prove no set of facts which would entitle them to relief. Accordingly, the court denies defendants' motion to dismiss plaintiffs' complaint under Rule 12(b)(6).

## 2. Compliance with Federal Rule of Civil Procedure 9(b)

■ A claim for fraud under the federal securities laws, 15 U.S.C. § 78j(b), must be pled with particularity. Rule 9(b) provides that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

While Rule 9(b) permits averment of knowledge and intent in general terms, it also mandates that a complaint plead the circumstances constituting fraud with particularity.

■ The United States Court of Appeals for the Eighth Circuit has not indicated exactly how Rule 9(b) applies in the securities fraud context. The Second Circuit has strictly applied Rule 9(b) to claims of fraud under the federal securities laws as a means of deterring frivolous suits. 2A Moore's Federal Practice ¶ 9.03[3] at 9.51 (2d ed. 1987). The district courts in the District of Minnesota have followed the lead of the Second Circuit. *See TCF Banking and Sav., F.A. v. Arthur Young & Co.,* 706 F.Supp. 1408 (D.Minn.1988) (Magnuson, J.); *Weisburgh v. St. Jude, Inc.,* Civil No. 4–92–638 (D.Minn. May 28, 1993) (Rosenbaum, J.) (dismissing complaint with leave to amend).[3]

■ To pass muster under Rule 9(b), the complaint must allege the time, place, speaker and sometimes even the content of the alleged misrepresentation. *DiVittorio v. Equidyne Extractive,* 822 F.2d 1242, 1247 (2d Cir.1987). The court finds that the allegations concerning an announced timetable for the completion of human clinical trials and introduction of Tenalure to the market as well as the alleged delay are faulty in this respect. The complaint contains no facts to establish that defendants made any statements concerning the timing of the completion of human clinical studies.[4]

■ The court also finds that plaintiffs' allegations of fraud are deficient. Although scienter need not be alleged with great specificity, a complaint must adduce specific facts which give rise to a "strong inference" of fraudulent intent. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990) (citations omitted). *See also Greenstone v. Cambex Corp.,* 975 F.2d 22, 25 (1st Cir.1992) (Breyer, J.) (plaintiffs cannot avoid pleading the circumstances constituting fraud with particularity "simply through a general averment that defendants 'knew' earlier what later turned out badly."). Allegations of fraud may be based on information and belief when facts are peculiarly within the knowledge of the opposing party. *Wexner,* 902 F.2d at 172 (citations omitted). "This excep-

---

3. Judge Magnuson recognized that Rule 9(b) serves "three distinct purposes" in the context of securities litigation:

First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

*TCF Banking,* 706 F.Supp. at 1411 (citations omitted). The court agrees that a strict construction of the requirements of Rule 9(b) is necessary and appropriate in the securities fraud context.

4. In its Form 10–K filed with the SEC on September 27, 1991, Lifecore stated merely that Ethicon was conducting human clinical studies. The only statements alleged in the complaint concerning the timing of the completion of human clinical tests were made by Ethicon. In October 1991, a senior Ethicon official told investors that Ethicon hoped to finish human clinical tests of Tenalure by the end of 1991 and would then request premarketing approval from the FDA. The official also stated that if such approval was granted, the product could be on the market as early as the first quarter of 1993.

tion to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.*

■ The court has reviewed the Consolidated Amended Complaint with great care. Plaintiffs claim that defendants knew, before the close of market on Friday, October 2, 1992, that Ethicon's human clinical testing of Tenalure was not demonstrating anticipated efficacy. The complaint before the court resembles a case of "fraud by hindsight." The primary theory of plaintiffs' fraud allegations is that since Lifecore announced bad news on October 5, 1992, it must have known and failed to disclose that bad news beforehand. The "hindsight" involved in this case involves inferring, from Ethicon's poor test results, that defendants had earlier knowledge that such results were likely. A general averment of such knowledge, however, fails to satisfy even a relaxed pleading standard.

To raise an inference of fraud, plaintiffs rely heavily on three factual allegations: (1) the disappointing Tenalure test results, (2) the "close working relationship" between Lifecore and Ethicon,[5] and (3) the financial importance of Ethicon to Lifecore.[6] Plaintiffs contend that defendants' fraudulent intent can be inferred from the supporting statement of facts. The court disagrees. A case of securities fraud may not rest on a bare inference that defendants' must have had knowledge of the true facts as alleged by plaintiffs. Plaintiffs offer no facts to establish why they believe that disappointing test Tenalure results were in existence prior to October 2, 1992. Plaintiffs also fail to allege any facts concerning when defendants obtained information about the test results from Ethicon. There is no allegation of insider trading by defendant Bracke in either suspicious amounts or at suspicious times.

In sum, the complaint does not given any basis for believing that the difference between the defendants' earlier statements and the October 5 announcement are attributable to fraud. There is absolutely no factual basis for believing that, at the time the earlier statements were made, defendants' knew the clinical tests were going poorly or that defendants were aware of poor Tenalure test results. Plaintiffs may not simply rely on the proposition that defendants must have known of and concealed the disappointing test results before the October 5 announcement. The inferences suggested by plaintiffs, while in the "realm of speculation," are not supported by specific facts. *See In re First Chicago Corp. Sec. Litig.,* 789 F.Supp. 919, 923–24 (N.D.Ill.1992). The court concludes that the allegations in the Consolidated Amended Complaint do not provide a factual basis from which an inference of fraud can be drawn.

## CONCLUSION

Rule 9(b) of the Federal Rules of Procedure mandates that fraud be pled with specificity. The allegations contained in the Consolidated Amended Complaint are not specific enough to meet the Rule 9(b) threshold. Although, at first blush, plaintiffs' allegations may have the appearance of specificity, in substance they are conclusory and fail to provide an adequate factual basis for an inference of fraud and scienter. The court concludes that the Amended Consolidated Complaint fails to allege, with the requisite particularity, sufficient non-conclusory facts to sustain plaintiffs' allegations of fraud under the federal securities law. The claim of secondary liability as well as the state law claims alleged are dependent on plaintiffs' ability to state a claim of primary liability under federal securities law.

Based on the foregoing, **IT IS HEREBY ORDERED** that the motion of defendants to dismiss plaintiffs' Consolidated Amended Complaint is granted, without prejudice, subject to plaintiffs' right to amend the complaint within 20 days to allege sufficient facts upon which their allegations rest. It is

---

**5.** In its Form 10–K filed with the SEC on September 27, 1991, Lifecore stated that "[s]ince entering into the supply agreement, the Company has worked closely with Ethicon in connection with the development of a hyaluronate-based product intended to reduce surgical adhesions."

**6.** The Form 10–K also indicated that Lifecore anticipated continuing orders of hyaluronate by Ethicon and stated that "the Company believes that its business relationship with Ethicon is very important to its financial success."

FURTHER ORDERED that the court denies as moot defendants' appeal from the order denying their motion to stay discovery entered by United States Magistrate Judge Floyd E. Boline, dated May 12, 1993.