## In re BUFFETS, INC. SECURITIES LITIGATION.

### Civ. No. 3–94–1447.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 22, 1995.

Stacey L. Mills, Heins, Mills & Olson, Minneapolis, MN and Scott W. Fisher, Noah Silverman, Garwin, Bronzaft, Gerstein & Fisher, New York City, for Plaintiff.

Wendy J. Wildung, Gordon G. Busdicker, Faegre & Benson, Minneapolis, MN, for Defendant.

### ORDER

DAVIS, District Judge.

This matter is before the Court upon plaintiffs' objection to Magistrate Judge Mason's Report and Recommendation dated August 9, 1995. Pursuant to statute, the Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review and all the arguments of the parties, the Court ADOPTS the Report and Recommendation. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' Consolidated Complaint is dismissed without prejudice for failure to comply with Fed.R.Civ.P. 8 and 9(b). Plaintiffs are given leave to file an Amended Consolidated Complaint within 20 days.

2. Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied without prejudice.

## REPORT AND RECOMMENDATION

MASON, United States Magistrate Judge.

### PROCEDURAL HISTORY

On October 25, 1994, Buffets, Inc. issued a Press Release reporting on its third quarter results. Later that day, the price of Buffets stock fell from $15.125 to $11. The first of four shareholder class action lawsuits was brought within two weeks, alleging that this Press Release was the first disclosure of facts that Defendants had been concealing until then, with the purpose of artificially inflating the price of Buffets, Inc. stock.

Four related class actions were filed in this Court. By Order dated January 12, 1995, on Stipulation of the parties, the Court entered its Pretrial Order No. 1, [Docket No. 12] directing that those cases and any subsequently filed related actions be consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure. The Order further directed that a Consolidated Amended Class Action Complaint (hereinafter the "Consolidated Complaint") be filed on or before January 31, 1995. The Consolidated Complaint was filed on February 1, 1995. [Docket No. 13]. Plaintiffs allege that Defendants' conduct constitutes fraud under Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b)) [1] and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5) [2], and that the individual Defendants are liable as

---

1. § 78j. Manipulative and deceptive devices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deception device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. § 240.10b–5 Employment of manipulative and deceptive devices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

"control" persons under Section 20(a) (15 U.S.C. § 78t(a)).

By Pretrial Order No. 2 dated March 3, 1995 [Docket No. 14], upon Stipulation of the parties, the Court established a schedule for the submission of Defendants' Motion to Dismiss the Consolidated Complaint. The Order required that Defendants' Motion and supporting papers be served and filed by March 14, 1995; Plaintiffs' Responding papers by April 21, 1995; and Defendants' Reply by May 1, 1995, when the matter would be considered submitted by the Court for determination without oral argument.

On March 14, 1995, Defendants submitted their Motion and supporting papers. [Docket Nos. 15, 16 and 17]. Plaintiffs' Response was filed April 24, 1995 [Docket Nos. 20 and 21]. Defendants Reply was filed May 2, 1995 [Docket Nos. 23 and 24]. The motion was referred to the undersigned for a Report and Recommendation by District Judge Michael J. Davis.[3]

Defendants move to dismiss the Consolidated Complaint for failure to comply with the Federal Rules of Civil Procedure, particularly Rules 9(b) and 12(b)(6). For the reasons set forth hereafter, it is recommended that the Consolidated Complaint be dismissed without prejudice.

## REPORT/FINDINGS OF FACT

### Historical Background

This case presents another example of the progression of procedural issues from the technicalities of pleading associated with interpretations of the Field Code, to pretrial discovery abuses, delays, and other costs associated with some interpretations of the Federal Rules of Civil Procedure. Professor Arthur R. Miller dramatically stated the problem confronting Courts:

"The inability of the American judicial system to adjudicate civil disputes economical-

ly and efficiently is one of the most pressing issues facing the Courts today."

Miller, Arthur R., *The Adversary System: Dinosaur or Phoenix,* 69 Minn.L.Rev. 1 (1984). Although this may overstate the urgency of the issue, there has been general consensus that the costs and delays of the litigation process are matters that require a response.

There are many causes of expense and delay. Some are no doubt attributable to the "unfortunate side effects of policies and procedures embodied in our extremely permissive and forgiving procedural system." Miller, *id.* at 3.[4] Professor Martin B. Louis described the swing from the strict pleading rules of the Field Code to the other extreme in the Federal Rules:

These changes in the pretrial system reflected a new procedural outlook: any claim or defense asserted in good faith was presumptively entitled to a trial on the merits unless and until its insufficiency was clearly established. This new outlook, which appeared to be a welcome movement away from the anticlaimant bias of the Field Code, soon so dominated the judiciary's view of the new procedural system that it often obliterated the Field Code's countervailing concerns for judicial efficiency and fairness to opposing parties. The end result was a system that by 1983 was as biased in one direction as the Code had been in the other—a system so indulgent of dubious claims, defenses, and behavior that it fell prey to adversarial ethics, crowded dockets, rising litigation costs, abusive discovery, and holdup litigation.

Louis, Martin B., *Intercepting and Discouraging Doubtful Litigation: A Golden Anniversary View of Pleading, Summary Judgment, And Rule 11 Sanctions Under the Federal Rules of Civil Procedure,* 67 No.Car. L.Rev. 1023 at 1028–29 (1989) (substantive supporting lengthy footnotes omitted).

---

**3.** Plaintiffs filed a Surreply on May 8, 1995, [Docket No. 25] but that has not been considered by the Court because it is not contemplated by the Rules or by Pretrial Order No. 2. *See* letter of Magistrate Judge Mason, May 11, 1995 [Docket No. 26].

**4.** Professor Miller says: "In our zeal to enable everyone to dine at the 'Justice trough,' all we ask of claimants is that they tell us where it hurts and what they want in a 'short and plain statement of the claim,' making it virtually impossible to stop a litigant at the courthouse door." Miller, *id.* at 8–9.

The permissive interpretation of the Rules imposes costs upon litigants, who are subjected to lengthy pretrial discovery, disruption and attorneys' fees in cases of doubtful merit. Courts have become sensitive to the cost to litigants that is imposed by the mere existence of the litigation and the threat of discovery. There is also a cost to the system, because parties with fanciful or unprovable claims, if not encouraged, at least are not deterred from commencing litigation in hope of a recovery by way of settlement. If settlement may be compelled in "strike suits,"[5] it encourages more such suits, and invites disrespect for the judicial process. As Professor Louis notes, the liberal interpretation of pleading requirements in the Federal Rules "not only failed to intercept doubtful claims, but it may have inadvertently invited their initial assertion." Louis, *supra,* 67 No.Car. L.Rev. at 1031.

Congress enacted the Civil Justice Reform Act of 1990 (28 U.S.C. §§ 471–82) as one effort at systemic change, including encouraging "early and ongoing control of the pretrial process through involvement of a judicial officer...." 28 U.S.C. § 473(a)(2). The 1993 amendments to the Rules of Civil Procedure were another response, also suggesting earlier judicial control of the pretrial process.

In more recent years, courts have attempted to employ "pretrial interception/discouragement mechanisms" which occupy the middle ground: Avoid the formalism of the Field Code, and avoid the problems arising from the absence of almost any pleading standards under some interpretations of the Federal Rules. Professor Louis describes three of these tools: "[1] prediscovery interception at the pleading stage, principally through the motion to dismiss for failure to state a claim for relief, [2] post-discovery interception through the motion for summary judgment, and [3] sanctions for violation of the truth-in-signing requirements of Rule 11." Louis, *supra,* at 1033. The motion before the Court is an effort at "prediscovery interception."

The problem of the costs and expenses and related distraction of groundless litigation is particularly acute in securities litigation. The Supreme Court has stated:

"There has been widespread recognition that litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general."

\*    \*    \*    \*    \*    \*

"[I]n the field of federal securities laws governing disclosure of information even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment."

*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 739–40, 95 S.Ct. 1917, 1927–28, 44 L.Ed.2d 539 (1975). The term "fraud by hindsight" came to be applied to many such actions, because of the aptness of the phrase in an opinion by Judge Henry Friendly:

In sum, the complaint is an example of alleging fraud by hindsight. For the most part, plaintiff has simply seized upon disclosures made in later annual reports and alleged they should have been made in earlier ones."

*Denny v. Barber,* 576 F.2d 465 at 470 (2d Cir.1978) (Friendly, J.). Similar descriptive phrases may be found in more recent opinions, such as *Stransky v. Cummins Engine Company, Inc.,* 51 F.3d 1329, 1330 (7th Cir. 1995):

"The predicate for this case is a familiar one: a company makes optimistic predictions about future performance, the predictions turn out to be less than prophetic, and shareholders cry foul, or more specifically, fraud."

*See also DiLeo v. Ernst & Young,* 901 F.2d 624, 627–28 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *In re Time Warner,* 9 F.3d 259, 263 (2d

---

**5.** In *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363 at 371, 86 S.Ct. 845 at 850, 15 L.Ed.2d 807 (1966), the Supreme Court analyzed the use of Rule 23(b), "to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to cause corporate managers to settle worthless claims in order to get rid of them."

Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *Wayne Invest. Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir.1984); *Kowal v. MCI Communications Corp.,* 1992 WL 121378 at \*7, 1992 U.S. Dist. LEXIS 7437 at \*22–23 (D.D.C. May 19, 1992), *aff'd* 16 F.3d 1271 (D.C.Cir.1993).

While acknowledging the problem being addressed, some commentators have criticized the use of rules of pleading to achieve the objectives of discouraging strike suits,[6] but the practice has become common. As noted above, in a growing number of securities cases, courts have dismissed shareholder litigation at the pleading stage, prior to discovery. In this district there have also been many recent cases in which complaints have been dismissed at the pleading stage. *E.g., TCF Banking & Savings v. Arthur Young & Co.,* 706 F.Supp. 1408 (D.Minn.1988) (Mac-Laughlin, J.); *In re Lifecore Biomedical, Inc.,* 159 F.R.D. 513 (D.Minn.1993) (Doty, J.); *Weisburgh v. St. Jude Medical Inc.,* 158 F.R.D. 638 (D.Minn.1994) (Rosenbaum, J.).[7] Judge MacLaughlin noted that application of stricter rules of pleading "serves three distinct purposes," as follows:

> "First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense. *Ross v. A.H. Robins,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Stewart v. Fry,* 575 F.Supp. 753, 756 (E.D.Mo.1983)."

*TCF Banking, supra,* 706 F.Supp. at 1411. *Accord: In re Lifecore Biomedical, Inc., su-*

pra, 159 F.R.D. at 516, n. 3; *Weisburgh, supra,* 158 F.R.D. at 642.

### Discussion

It is against this historical background that we review Defendants' Motion to Dismiss the Consolidated Complaint. One question now before this Court is whether Plaintiffs have adequately specified the conduct of which they complain, and how it is that such conduct constitutes fraud. (Rule 9(b)). Another is whether, if sufficiently specific, Plaintiffs' Consolidated Complaint states a claim upon which relief may be granted (Rule 12(b)(6)). Before reaching those issues, the Consolidated Complaint will be reviewed with respect to the simplicity requirements of Rule 8.

### Rule 8

Rule 8(a)(2) requires that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e) requires that "each averment of a pleading shall be simple, concise, and direct." Neither standard is met by the Consolidated Complaint, which is 55 pages long and contains 129 paragraphs. The initial 37 paragraphs set forth preliminary allegations. "Substantive Allegations" begin at page 13, paragraph 38, and continue through page 47, paragraph 112, with various chapter headings and subheadings. These allegations then are realleged to begin Count I, (paragraphs 113 through 124) and Count II (paragraphs 125 through 128). What was said as to a Complaint in another action might also be said (albeit with less force) here:

> "The complaint is unwieldy in the extreme. It is 113 pages long, and often rambles through long stretches of material quoted from defendants' public statements ... This is, at the very least, poor draftsmanship. It is impossible to overlook the fact that the organization of the complaint of-

---

6. *E.g.,* Note, *Pleading Securities Fraud Claims With Particularity Under Rule 9(b),* 97 Harv. L.Rev. 1432 (1984); Marcus, Richard L., *The Revival of Fact Pleading Under the Federal Rules of Civil Procedure,* 86 Columbia L.Rev. 433 (1986).

7. *First Presbyterian Church of Mankato v. John G. Kinnard & Co.,* 881 F.Supp. 441 (D.Minn.1995) (Davis, J.), upon which plaintiffs rely, is not to

the contrary. It merely holds that a complaint will not be dismissed under the facts there presented. A defendant represented that a housing investment was "low risk" although it knew construction had not been begun, and failed to disclose that a principal had been sanctioned by his bar association, and had his broker-dealer registration revoked for fraudulent statements.

ten makes the nature of the fraud difficult to divine, and certainly makes the complaint difficult to respond to. At argument, plaintiffs' counsel, when pressed on the sufficiency of individual paragraphs, responded that each was merely 'a piece of this puzzle.' A complaint is not a puzzle, however, and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint.

\* \* \* \* \* \*

To say that the drafting is infelicitous puts matters too kindly. The complaint is cumbersome almost to the point of abusiveness. We see nothing to prevent the district court, on remand, from requiring, as a matter of prudent case management, that plaintiffs streamline and reorganize the complaint before allowing it to serve as the document controlling discovery, or, indeed, before requiring defendants to file an answer. Complaints fashioned as this one is are an unwelcome and wholly unnecessary strain on defendants and on the court system."

*In re GlenFed, Inc.*, 42 F.3d 1541, 1553–54 (9th Cir.1994).

The legal elements of Plaintiffs' claim can be summarized as follows: (1) misrepresentations or omissions of material fact; (2) causation, often analyzed in terms of materiality and reliance; (3) damages; (4) that the fraudulent activity occurred in connection with the purchase and sale of a security; and (5) a finding of scienter, that is, an "intent to deceive, manipulate, or defraud." *Harris v. Union Elec. Co.*, 787 F.2d 355, 362 (8th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986); *see also First Presbyterian Church of Mankato v. John G. Kinnard & Co.*, 881 F.Supp. 441, 443 (D.Minn.1995). Any pleading seeking relief in a case brought under Rule 10b–5 must make clear which of its allegations satisfy each of the elements of the claim. As to the element of misrepresentation alone, the value of simplicity may be seen when the apparent allegations in this case are sorted from the lengthy Consolidated Complaint and analyzed from the point of view of the What? Why? Where? Who? and When? of the matter.

Allegations concerning the element of alleged misrepresentation as to 50 new restaurants could easily be set forth in just a few paragraphs of a Complaint. What is the representation? The company will open 50 new restaurants in 1994 (with various qualifiers such as "expects", "plans", "anticipates", "approximately"). Why is each representation false? Where was each representation made? Who made each representation? When was each representation made? Allegations as to each of the other elements of this alleged misrepresentation must also be set forth concisely and with particularity. The same would be true as to any other misrepresentation or omission of material fact which Plaintiffs would claim.

All three "pretrial interception/discouragement mechanisms" are served by requiring a party to set forth its claims clearly and with particularity. By complying with the requirements of Rule 8, it is likely that a Complaint will also comply with Rule 9(b), and it will be more readily apparent as to whether the Complaint complies with Rule 12(b)(6). Where the allegations are clear, the parties themselves may ascertain whether discovery requests are reasonably related to the issues in the litigation, thus reducing the risk of costly disputes about discovery issues. After the close of discovery, clear pleadings enable the parties to focus the issues for presentation of motions for summary judgment or trial. Finally, the wide latitude afforded by notice pleading is balanced by requiring restraint by attorneys in presenting only those allegations that the attorney believes are proper and supported by law and the facts. Requiring clarity in pleadings serves to enhance the self-policing features embodied in Rule 11, since it then may more easily be seen whether the requirements of Rule 11 have been met.

■ It has been argued that the requirements of Rule 8 are inconsistent with the provisions of Rule 9(b) which require that "the circumstances constituting fraud or mistake shall be pleaded with particularity." This would be correct only if Rule 9(b) were

interpreted to require an extensive narrative description of the evidence upon which a party relies for its claim of fraud. To the contrary, the problems created by failure to comply with the requirements of Rule 8 are interrelated with the problems arising from violations of Rule 9(b). *See Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Felton v. Walston & Co.,* 508 F.2d 577, 580 (2d Cir.1974); *see also Daher v. G.D. Searle & Co.,* 695 F.Supp. 436, 440 (D.Minn. 1988). The requirements of Rule 9(b) should be construed as requiring a party to particularize the allegations and eliminate the argumentative verbiage in a Complaint. This permits the parties and the Court to clearly analyze precisely what claims are being made.

Plaintiffs' Consolidated Complaint should be dismissed, not just because it does not say enough, but because it says too much. Instead of clearly stating the basis for each of the elements of their claim, Plaintiffs engage in lengthy narrative that serves to conceal rather than reveal.

> We know well that a fallacy that would be obvious to all in a three-line syllogism may deceive the elect in 400 pages of crowded fact and argument.... I think it is a useful exercise for any of us ... to reduce any book of whose conclusions we are doubtful into a set of formal syllogisms and lay bare the bones of the argument.— Josiah Stamp.

Max Black, *Critical Thinking* 13, (Prentice Hall, N.Y.1952). By dismissing the Consolidated Complaint, this Court can require Plaintiffs themselves to "lay bare the bones of their argument." *See Agnew v. Moody,* 330 F.2d 868, 870 (9th Cir.1964); *Hartz v. Friedman,* 919 F.2d 469, 470 (7th Cir.1990); *Johnson v. Hunger,* 266 F.Supp. 590, 591 (S.D.N.Y.1967).

### Rule 9(b)

Rule 9(b) provides that when fraud is alleged, "the circumstances constituting fraud or mistake shall be stated with particularity." Compliance with this requirement of Rule 9(b) should be reviewed as to each of the elements of the claim of fraud in the Consolidated Complaint and as to each of the named Defendants. The Consolidated Complaint should be dismissed upon the additional ground that it fails to comply with the requirements of Rule 9(b).

The first element of a claim under Rule 10b–5 is to establish a representation or omission of material fact. Count I of Plaintiff's Consolidated Complaint alleges that "Defendants falsely and misleadingly made positive and optimistic statements regarding the number of new restaurants it expected to open in 1994." (¶ 114). It is more specific in paragraph 117:

> "117. In connection with the false and/or misleading statements, Defendants falsely stated in the press releases, forms 10Q, Form 10K and Annual Report as described herein, that they planned, anticipated and expected to open 50 new restaurants in 1994."

These allegations are sufficiently factually specific to meet the requirements of Rule 9(b) as to the content of the alleged representation. The Who? Why? When? and Where? of these alleged representations, and the allegations of the elements of scienter, falsity, causation, damages and relationship to market sales is less clear.

Scienter is one of the elements which is not alleged with sufficient specificity. The standard to be applied under Rule 9(b) as to the element of scienter has not been directly decided by the Court of Appeals for the Eighth Circuit. The Second Circuit requires that a Complaint "specifically plead those events which they assert give rise to a strong inference of fraudulent intent." *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). The Ninth Circuit expressly rejected the *O'Brien* and *Ross* standard. *In re GlenFed, Inc.,* 42 F.3d 1541, 1545–1547 (9th Cir.1994). However, the Ninth Circuit also required that a pleading state the basis of its claim of scienter, and required that the Complaint provide "an explanation as to why the disputed statement was untrue or misleading *when made." Id.* at 1549 (emphasis in original). It explained

the reason why this is required in securities fraud cases:

> "What makes many securities fraud cases more complicated is that often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false.... [I]t is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood."

*In re GlenFed, Inc., supra.,* 42 F.3d at 1548.

The Court of Appeals for the Seventh Circuit held:

> "Although Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint must still afford a basis for believing that plaintiffs could prove scienter."

*DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990).

■ This Court concludes that the law to be applied in interpreting the requirements of Rule 9(b) as to the element of scienter is consistent with the conclusions of the Seventh and the Ninth Circuit. A Complaint must set forth the facts explaining why it is claimed that the representations were known by each of the Defendants to be untrue or misleading when they were made. The Consolidated Complaint fails to meet this standard as to any of the occasions on which it is claimed that any of the Defendants made the disputed representations concerning 50 new restaurants.

■ Plaintiffs suggest that their allegations in Paragraph 64 with respect to insider trading are sufficient to meet the scienter standard. It has been held that "insider trading in suspicious amounts or at suspicious times is, of course, presumptively probative of bad faith and scienter." *Rubinstein v. Collins,* 20 F.3d 160, 169 (5th Cir. 1994). But nothing in the Consolidated Complaint suggests why it should be concluded that the sales by Defendants were of "suspicious amounts or at suspicious times." *See*

*In re Apple Computer,* 886 F.2d 1109, 1117–1118 (9th Cir.1989). The Consolidated Complaint alleges that in the period from November, 1993 through August, 1994, seven different Defendants sold various amounts of Buffets stock on 20 different dates and that the proceeds of such sales are in the millions of dollars. Nothing about the dates of the transactions is inherently suspicious. While large proceeds might be suspicious if other facts were present, nothing in the Consolidated Complaint alleges why these sales (relatively small compared with total holdings) are suspicious, nor that the sales during this period were greater than those outside of the class period.

■ In Paragraph 23 of the Consolidated Complaint, Plaintiffs make boiler plate multiple-choice allegations which can be interpreted to allege that each of the Defendants: (1) knew *or* recklessly disregarded; (2) that the Company's disclosures were materially false *or* misleading; because (3) they misrepresented material facts *or* omitted stating facts; (4) including *but not limited to*; (5) "several negative facts and trends," which; (6) rendered the company's optimistic projections unreasonable *and/or* unbelievable concerning; (7) new restaurant openings; (8) revenue growth; and (9) earnings growth. These allegations leave open an almost infinite number of possible combinations of claims, and are not sufficiently specific to meet any test under the Rules.

■ There are other ambiguities which make the Consolidated Complaint deficient. To be actionable, a statement or omission must not only be material, it must be "false or misleading." But the Consolidated Complaint does not directly allege that any statement is false or misleading. Paragraph 23 of the Consolidated Complaint alleges that the "negative facts and trends" render the company's optimistic projections *"unreasonable and/or unachievable."* Paragraph 72 alleges that "several significant, undisclosed trends developed that drastically *undermined the validity* of Defendants' repeated and widely disseminated aggressive projections of new restaurant openings." Phrases such as these do not meet the standard of Rule 9(b) because they fail to allege the element of falsity

that is required, substituting phrases that are deliberately ambiguous.[8]

What is said with respect to Count I of the Consolidated Complaint applies equally to Count II brought against the individual Defendants under Section 20(a) of the 1934 Act, since to establish liability under that section, a plaintiff must first establish liability under Section 10(b). *See e.g., In re Lifecore Biomedical, Inc.,* 159 F.R.D. 513, 517 (D.Minn.1993).

### Rule 12(b)(6)

The Court will defer consideration of Defendants' motion to dismiss based upon Rule 12(b)(6). Deferring a ruling on a Rule 12(b)(6) motion allows the self-policing functions of the Rules of Civil Procedure to operate. If an Amended Complaint is submitted, the clarity of the allegations will facilitate an evaluation of the issues raised by Rule 12(b)(6) in a way which is less clouded than in the present stage of this case.

It is recommended that Defendants' Motion to dismiss based upon Rule 12(b)(6) be denied without prejudice, subject to renewal if Plaintiffs file a new Complaint which meets the requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure.

### Dismissal Without Prejudice

Finally, the Court must determine whether the dismissal of the Consolidated Complaint should be with or without prejudice. There does not appear to have been any real analysis of the issue in the reported cases. There are reasons why dismissal with prejudice would be appropriate.

A plaintiff has a duty to draft its Complaint in compliance with the applicable Rules. When a plaintiff is presented with a motion to dismiss for failure to comply with the provisions of Rule 8 or Rule 9(b), it chooses whether to voluntarily seek to amend its Complaint, or to stand on the Complaint and proceed on the basis of the Complaint as originally drafted. In this particular case, the Consolidated Complaint represents the combined efforts of counsel from seven law firms following the filing of four separate Complaints. Substantial time was also afforded in the briefing schedule to allow counsel to determine on their own whether the objections to their Consolidated Complaint were well-grounded. Since Plaintiffs elected to stand on their Consolidated Complaint, it would be appropriate for the Court to conclude that Plaintiffs were of the belief that they could not plead their claim with greater clarity or specificity.

There are also strong policy considerations which would support dismissal with prejudice, rather than without prejudice. If a party may always have an opportunity to submit an Amended Complaint if it is determined that its initial Complaint does not meet the requirements of the Rules of Civil procedure, that party will have little incentive voluntarily to comply with the requirements at the pleading stage. The party will not even have an incentive to acknowledge its error when a motion to dismiss is filed, subjecting courts and the parties to an additional burden and expense, which may be avoided.

On the other hand, care must be taken to avoid elevating pleading requirements to an art form. It is observed that in most, if not all cases, the initial dismissal for failure to comply with Rule 8 or Rule 9(b) has been without prejudice, with leave to amend. Remedies other than dismissal with prejudice are also available to respond to improper conduct. Defendants have not seriously pressed an argument for dismissal with prejudice in this case. It is recommended that the dismissal of Plaintiffs' Consolidated Complaint be without prejudice. Whether this opportunity should continue to be afforded to Plaintiffs may be decided by the District Court in future cases.

### CONCLUSION

Based on the foregoing, and all of the files, records, and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. The Consolidated Complaint be dismissed for failure to comply with Rules 8 and 9(b) of the Rules of Civil Procedure.

---

**8.** The problem is compounded in this case by questions as to whether a "trend" may be said to have existed on any specific date or that a person was aware of that trend on that date.

2. The Consolidated Complaint be dismissed without prejudice, and Plaintiffs be given leave to file an Amended Consolidated Complaint within 20 days.

3. Defendants' Motion to Dismiss based upon Rule 12(b)(6) be denied without prejudice.

Dated: August 9, 1995.